Filed 1/23/23 Palos Verdes Homes Assn. v. Avedon CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
| --- | --- |
| PALOS VERDES HOMES ASSOCIATION, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> DAVID AVEDON, <br><br> Defendant and Appellant. | B314228 <br><br> (Los Angeles County Super. Ct. No. YC033114) |

APPEAL from an order of the Superior Court of Los Angeles County, Deirdre Hill, Judge. Affirmed.

The Law Offices of Charles Peterson and Charles F. Peterson; Benedon & Serlin, LLP, Malinda W. Ebelhar and Kian Tamaddoni, for Defendant and Appellant.

Law Offices of Marc A. Mazorow and Marc A. Mazorow; Jeff Lewis Law, APC, Jeffrey Lewis and Sean C. Rotstan, for Plaintiffs and Respondents Desiree Myers and William Regan.

———————————

Appellant David Avedon fka David Goldhammer (Avedon) and respondents Desiree Myers and William Regan (Regans) are neighbors who have been involved in a series of disputes regarding foliage on Avedon's property. Their latest dispute concerns Avedon's effort to plant eighteen new trees on his property pursuant to a landscaping plan approved by their homeowners' association. The Regans contend those new trees will severely impact their ocean views.

The last time a dispute like this arose, an arbitrator appointed by the parties resolved it. Based on his interpretation of an earlier settlement agreement between the parties, the arbitrator permitted Avedon to plant new foliage approved by the homeowners' association but required him to maintain it in such a manner as to prevent impairment of the Regans's ocean views.

This time, the Regans obtained a preliminary injunction barring Avedon from planting new foliage that will mature to a height exceeding the limits set by the arbitrator's ruling. Avedon contends that the trial court abused its discretion in issuing the preliminary injunction by basing its ruling on a misinterpretation of the parties' settlement agreement, the arbitration award, and subsequent court orders based on them.

We disagree and conclude that the trial court did not abuse its discretion in granting the preliminary injunction.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Regan and Avedon properties

Avedon and the Regans are neighbors who own adjacent hillside properties in Palos Verdes Estates. Both properties overlook the Pacific Ocean.

The Regans's property (Regan Property) is on a higher elevation than Avedon's property (Avedon Property) and overlooks the rear of the Avedon Property. The Avedon Property is below and to the west of the Regan Property.

Both properties are governed by the Basic Protective Restrictions, Conditions, Covenants, Reservations, Liens and Charges of Palos Verdes Estates (CC&Rs). Those CC&Rs grant the Palos Verdes Homes Association (PVHA) and Palos Verdes Art Jury (Art Jury) the responsibility for enforcing the CC&Rs.

Relevant here, the CC&Rs provide that "[n]o part of . . . any property at any time within the jurisdiction of the Art Jury or of [PVHA] shall be . . . improved by . . . landscaping or planting . . . except with the approval of the Art Jury . . . ." The CC&Rs further provide that "[n]o . . . planting shall be erected . . . altered or maintained upon . . . any property at any time within the jurisdiction of the Art Jury or of [PVHA] . . . unless plans and specifications therefor . . . shall have been submitted to, approved in writing by the Art Jury . . . ."

### II. The initial lawsuit and settlement agreement

PVHA filed a lawsuit against Avedon in 1998 regarding several palm trees and other foliage planted on his property without PVHA approval. The Regans intervened in the action. Avedon and the Regans settled the lawsuit the following year and

3

entered into a written settlement agreement (Settlement Agreement).[1]

The Settlement Agreement's recitals described the specific foliage on Avedon's property at issue: Three Canary Island palm trees, an olive tree, several bamboo trees, a box tree, and a pepper tree. According to the recitals in the Settlement Agreement, Avedon and PVHA agreed that Avedon would remove the three Canary Island palm trees from his property. In their place, he was allowed to plant Queen palm trees. Regarding the remaining foliage, i.e., the olive, bamboo, box, and pepper trees, Avedon and the Regans agreed that Avedon would trim and maintain the foliage to heights and in a manner specified in the Settlement Agreement.

They also agreed that the Regans would maintain a ficus hedge on the Regan Property (and bordering the Avedon Property) to a specified height and add four more mature ficus trees at locations desired by Avedon.

Regarding new plantings on the Avedon Property, Avedon and the Regans agreed that if Avedon intended to plant a tree or other vegetation "which now or in the future has the potential of growing to a height which may impair the Regans' ocean view," Avedon would notify the Regans of his plans. They further agreed "that the Art Jury or PVHA's decision on any plantings proposed by the Parties shall be final and binding on the Parties," and that they "shall not have any right to appeal or to object in any way to the decisions of the Art Jury or PVHA and have

---

[1] PVHA appears to have settled separately with Avedon. It was not a party to the recent proceedings at issue in this appeal.

knowingly and voluntarily waived any right to such an appeal or objection."

Last, the Regans agreed to dismiss their complaint-in-intervention against Avedon upon his completion of the tree trimming as specified in the Settlement Agreement. The Regans and PVHA dismissed their complaints in March 2000.

## III. 2003 amended settlement agreement

The Settlement Agreement included an arbitration clause covering "any and all disputes, controversies or claims arising out of or relating to, or the making, performance or interpretation" of the Settlement Agreement. A few years after entering into the Settlement Agreement, the Regans initiated arbitration against Avedon. That arbitration culminated in an amendment to the Settlement Agreement in January 2003 (Amended Settlement Agreement).

In the Amended Settlement Agreement, the parties gave retired "Judge [Victor] Barrera or his successor ultimate authority to enforce this the underlying Settlement Agreement and General Release and this Amendment with full discretionary powers consistent with the following guiding principles and documents: 1. The maximization of the privacy interests of [Avedon]. 2. The maximization of the whitewater/ocean views enjoyed by the Regans. 3. The height restriction/elevations as contained in the landscape plan concerning the property located at 1400 Via Lazo . . . .[2] 4. Any and all modifications to either

---

[2] The parties do not explain what property corresponds to this address, which is neither the address of the Avedon Property nor the Regan Property. That uncertainty is not material to our disposition of this appeal.

5

party's landscape plan later approved by the [PVHA] /Palos Verdes Art Jury."

The parties further agreed that "[p]ending any necessary approvals, if any, [Avedon] may plant along the western boundary of his property a reasonable amount of foliage in a single landscape plan in order to provide a privacy screen," and that in the event of a dispute regarding "what constitutes 'reasonableness' or what constitutes a 'single landscape plan,' Judge Barrera or his successor shall have full and final authority to make such a determination."

They also agreed that "[a]ll tree trimmings on the [Avedon] property, which affect or may affect the Regans' ocean view or on the Regan property affecting the privacy of [Avedon] shall be performed at the direction of Judge Barrera or his successor." Additionally, they agreed that "[a]ny written order made by Judge Barrera or his successor shall be deemed to be a part of this Agreement."

Regarding changes to their landscaping plans, the parties agreed that "[a]t anytime hereafter, the parties remain free to petition the [PVHA]/Art Jury in order [sic] modify their current landscape plan. The [PVHA]/Art Jury shall have full discretion and shall be the final arbiter as to whether or not to approve modifications to the landscaping plan of either party." They also agreed that the petitioning party has to notify the other party of the intended modification, and that the non-petitioning party is "free to provide input" to the PVHA/Art Jury.

Although the parties agreed that the "decision of the [PVHA]/Art Jury shall become binding and non-appealable," they further agreed that such decision "shall be interpreted and

6

enforced through this agreement by retired Judge Barrera or his successor."

## IV.     Interim arbitration award

In 2006, Avedon petitioned the PVHA and Art Jury to approve a new landscaping plan, which included the planting of a new olive tree and palm trees parallel to the Regans's ficus hedge and a new bamboo hedge. The Regans submitted objections to Avedon's landscaping plan to the Art Jury, but the Art Jury approved Avedon's plan.

The Regans then initiated arbitration. Retired Judge Gregory C. O'Brien, Jr., Judge Barrera's successor, visited the parties' properties and issued an Interim Arbitration Award dated June 11, 2007 (Interim Award).

At the outset, the Interim Award resolved whether the action of the Art Jury "ha[d] preempted further jurisdiction of this dispute by an arbitrator." Judge O'Brien concluded "the answer [was] no," and that the "parties contemplated the potential involvement by the Art Jury, but agreed that whatever action it took was to be 'interpreted and enforced by the arbitrator.' "

Next, Judge O'Brien issued specific orders regarding the proposed new foliage. First, he ruled that "to reconcile and harmonize the determination of the Art Jury with preserving the ocean views of Regan," Avedon could plant a bamboo hedge, but it could not "exceed the height of the ficus hedge behind it, or 12 feet, whichever is higher."

Second, he ruled that Avedon could "plant the olive and palm trees approved by the jury, but should be required to maintain them in a way that does not substantially impact Regan's view," which "might be accomplished by topping,

7

thinning and/or lacing the trees periodically when they rise, as expected, to a height that exceeds the height of the ficus hedge."

Third, he ruled that Avedon was required to have his landscaper top a hedge along his driveway "and any other vegetation intermingled with it (excepting the palm trees, which should be cleaned and thinned)," to maintain "a clear diagonal (down slope) line of sight from Regan's property" as approved in an earlier landscape plan.

Fourth, he ruled that Avedon's landscaper "should annually prune or lace, as appropriate, all vegetation on the [Avedon] property consistent with" the Interim Award.

Last, Judge O'Brien stated that "it is intended that this interim award shall be enforceable by a continuing order of the Superior Court upon a properly noticed petition of either party, without the need to request my further involvement."

In July 2007, the Regans petitioned to confirm the Interim Award. Avedon opposed the petition, contending that "there is no rational construction of the words 'interpret and enforce' which would equate to the power to nullify the landscaping plans approved by the PVHA/Art Jury . . . ." According to Avedon, the arbitrator's authority to "interpret and enforce" the decisions of PVHA and/or Art Jury did not include the power to determine "what the height limits should be for [Avedon's] landscaping." The court was apparently unconvinced by that argument and confirmed the Interim Award in August 2007.

## V.    2011 contempt proceeding

In 2011, the Regans initiated contempt proceedings against Avedon alleging he had violated the Interim Award. The trial court appointed an expert to assist the court in determining whether Avedon was in compliance with the Interim Award.

8

The expert submitted his report in June 2011. Relevant here, the expert recommended "pruning back the olive tree to the bottom edge of the roof line" to restore ocean views from the Regan Property, and that it "be laced out of any remaining dense foliage in conjunction with the pruning . . . to provide more transparency through the tree." The expert further concluded that the "height of the tree is approximately 30′-0″ and can be maintained at its current height without significant impact to the tree or blockage of significant views."

Regarding the driveway hedge, the expert found that it was "at an overall height of 12′-0″, with the exception of two areas. The upper portion on the NE property line is at a height of 15′-0″ . . . . A lower section along the driveway exceeds 12′-0″ in height for a few feet. . . . Both could be cut back to the 12′-0″ height for consistency as the privacy of [Avedon] would not be compromised in doing so."

Based on the expert's findings, in July 2011 the court ruled that Avedon was in contempt of the Interim Award (Contempt Order). The court found that the "olive tree ha[d] not been sufficiently trimmed and otherwise maintained as its breadth and density significantly impact[ed] the [Regans's] ocean view," and that the driveway hedge "exceed[ed] the maximum height restriction of 12′ in height."

The court's order required Avedon to take "each and every corrective measure as recommended" in the expert's report, and "perform consistent maintenance of the subject foliage and vegetation to remain in compliance with the Interim Award of [the] Arbitrator." That could be accomplished "by trimming and pruning the heights/breadths/densities of the respective foliage and vegetation at or below maximum limits as necessary,"

9

including "reducing the breadth and density of the olive tree in order to restore the coastline view" as depicted in the expert's report, "reducing the height" of the driveway hedge "to a height of 12′ above grade," and "ongoing removal of dead or dying palm fronds."

## VI. 2020 enforcement order

In June 2020, the Regans again moved for contempt against Avedon, this time alleging that Avedon had failed to adhere to the Contempt Order. In particular, the Regans alleged that Avedon had refused to comply with his duty to "perform consistent maintenance" on his vegetation and foliage.

Avedon opposed the motion, relying on evidence that from 2012 to 2019, he had retained professional tree trimming services to maintain the olive tree, palms trees, and hedges as required by the Contempt Order.

The trial court concluded that the evidence was insufficient to show that Avedon had willfully disobeyed the Contempt Order. Even so, the court directed the parties to propose a mutually agreeable enforcement procedure "to resolve issue re tree cutting." After considering proposals from both parties, the court entered an enforcement procedure order on August 20, 2020 (Enforcement Order).

The Enforcement Order states that the parties "will take all necessary measures to comply with the [Interim Award] and [Contempt Order]." It further provided that at either party's request, a neutral arborist would inspect the Avedon property "in order to determine whether the vegetation's measurements are in compliance with the Interim Award of Arbitrator and the Court's Contempt Order . . . ." If the neutral arborist's measurements "are not in compliance with the Interim Arbitration Award and

10

Court Order," then Avedon would have 21 days "to perform the remedial work" necessary to be in compliance. Afterwards, the neutral arborist "shall verify full compliance." If the neutral arborist determined that "Avedon's property remains non-compliant after attempted remediation, then either party shall have authority to seek an enforcement action (ex parte) in the Court having jurisdiction of this dispute."

## VII. Preliminary injunction regarding Avedon's 2021 landscaping plan

In January 2021, Avedon petitioned the PVHA and Art Jury for approval of a new landscaping plan. The new landscaping plan proposed planting two Canary Island palm trees, an oak tree, ten fruitless olive trees, and five pepper trees.[3] The Regans did not submit any objections to PVHA or the Art Jury regarding Avedon's 2021 landscaping plan. In February 2021, the Art Jury approved Avedon's landscaping plan.

The Regans then sought a temporary restraining order and preliminary injunction. They contended that the 2021 landscaping plan included foliage exceeding the height limitations set forth in the Interim Award and Contempt Order, and that the new foliage would interfere with their ocean views.

---

[3] The two Canary Island palm trees would replace three existing Queen palm trees on the northeast corner of the Avedon Property; the oak tree would replace an existing pine tree at the center of the property; six of the fruitless olive trees would be planted along the driveway hedge, and the remaining four would be planted along eastern boundary of the Avedon Property; and the five pepper trees would be planted along the eastern boundary of the Avedon Property.

11

According to the Regans, the court had "already ruled on Defendant's rights to grow and add vegetation, plants, and trees and limited the height and density of each." They further contended that the balance of equities favored maintaining the status quo.

The Regans submitted the declaration of Jerry Hernandez, a landscape architect and contractor, who stated that the foliage in the 2021 landscape plan would interfere with the Regans's views. According to Hernandez's declaration, Canary Island palm trees are "much larger in all respects" than Queen palm trees, which the Canary Island palm trees would replace; the type of oak tree at issue "grows to about 80 feet tall and has a canopy 70 feet wide"; the fruitless olive trees grow "about 45 feet tall and 30 feet wide"; and pepper trees grow "about 50 feet tall and 50 feet wide." According to Hernandez, "[i]n all, the Avedon proposed planting plan would severely impact the Regans' ocean view above and beyond what foliage is already planted."

On February 19, 2021, the court granted a temporary restraining order barring Avedon from "planting any live plant, tree, or foliage" on his property pending a hearing on an order to show cause regarding a preliminary injunction.

Avedon opposed the preliminary injunction request on several grounds. Among other things, he argued that the dispute belonged before an arbitrator, not the court; that the Interim Award and Contempt Order set limits on existing foliage, not future landscaping; that the parties agreed the Art Jury's decisions, including its approval of the 2021 landscaping plan, would be final and binding; and that the Regans waived any objection to the 2021 landscaping plan by failing to object to it before the Art Jury. Last, he contended that the balance of

equities favored him, because the new landscaping would "not conflict with PVHA's policy of protecting primary views" of the Regans, and because "none of Avedon's plantings are intended to grow to the height" described in Hernandez's declaration.

Avedon's opposition included the declaration of Miriam Rainville, a licensed landscape contractor, who designed Avedon's 2021 landscaping plan. According to Rainville, "[a]ll heights and materials were carefully specified based on [PVHA] requirements to address primary and secondary view corridors," and "[m]aterials placement and size will not conflict with [PVHA's] policy of protecting primary views of [the Regans's] residence above." Furthermore, Rainville stated that she had reviewed the exhibits and images accompanying Hernandez's declaration, and that "Avedon's landscaping plan does not anticipate his new plantings will grow to such enormous and magnificent heights and widths."

The court held a hearing on April 20, 2021. It first noted that the Regans's proposed preliminary injunction[4] was "way too broad" because it required "no planting." The court thus instructed the Regans to resubmit a proposed preliminary injunction that, instead of barring all new foliage, would bar Avedon from planting new foliage that at maturity would exceed 12 feet in height. The court stated that its "expectation is not that [Avedon's] not going to be allowed to plant any new planting, period. That's not what this is for."

In response to the concerns of the Regans's counsel that the Regans's views could still be affected notwithstanding a height

---

[4] The Regans's proposed injunction does not appear to be in the record.

13

restriction—because, for example, Canary Island palm trees are wider than the existing palm trees—the court emphasized that Avedon "is entitled . . . to some privacy as well," and that it could not "tell from this order that it would be something that would come into play in your client's view necessarily."

Avedon's counsel emphasized that the court was "second-guessing the [PVHA] and the arborists and the landscape architects who have already approved these plants in light of the [PVHA's] view protection corridors and view protection processes." Avedon's counsel also emphasized that the Regans should have raised their objections to the PVHA and/or Art Jury, and that the parties agreed that decisions of the PVHA and/or Art Jury "would not be in the purview of the Court but would be in the purview of the arbitrator."

The court agreed that Avedon's counsel did "have a point about the homeowners association's role," and asked for the Regans's position. In response, the Regans's counsel emphasized Judge O'Brien's ruling, which made clear that the PVHA and/or Art Jury "does not have the final role" in balancing Avedon's privacy and the Regans's view; and that "since we've been in enforcement now, it's all with the Court, it's not with the [PVHA]." According to the Regans's counsel, if the court's view was that Avedon's foliage could not "exceed 12 feet in height, then that's fine. That's what the arbitration award says." He further argued that "if we're going to throw that completely out and say, well, no, now the [PVHA] has the final word," it "nullifies everything that we've done in this case for the last 12 years."

The court took the matter under submission and issued a minute order later that same day. The court's minute order

concluded that "the purpose of the Enforcement Order is to keep the foliage on Avedon's property cut to a height to maintain Regan's view while still allowing for privacy. Given that intent, the order delineates existing foliage. Given the clear intent of the order being to preserve the view, the court finds that the order applies to all foliage—both the existing foliage and any new foliage which may be introduced to the area." The court further found that Hernandez's declaration "supports the conclusion that the new installation plan would severely impact the Regan's view."

Last, the court ruled that "[a]part from the homeowner's association's consideration of the new plantings, the plan itself has to comport with the parties' private agreement and the outline set forth by the court in the prior orders."

Consistent with the court's instruction at the hearing, the minute order directed the Regans "to revise the proposed order to specify that no planting known to mature to an elevation prohibited by the court order is to be planted. The arbitrator and/or court is to determine compliance with the parties' agreement as to any new plantings."

The court entered the preliminary injunction on June 2, 2021. The preliminary injunction reiterated the above-described conclusions from the minute order, and enjoined Avedon "from engaging in any of the following activities: [¶] 1. Planting on the real property commonly known as 1400 Via Montemar, Palos Verdes Estates, California ('the Avedon Property') any foliage known to mature to an elevation that exceeds the limitations set forth in either Interim Award of Arbitrator issued June 11, 2007, or this Court's Contempt Order dated July 11, 2011. [¶] 2. The compliance with of [sic] the restrained parties as to any new

15

plantings shall be determined by either the Court having jurisdiction of this dispute, or the Arbitrator appointed in compliance with the settlement agreement of the parties dated September 17, 1999."

Avedon timely appealed.[5]

## DISCUSSION

### I. Legal principles and standards of review

"In determining whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm the plaintiff is likely to sustain if the injunction is denied as compared to the harm the defendant is likely to suffer if the court grants a preliminary injunction." (*Husain v.*

---

[5] The Regans argue that Avedon's appeal is untimely for two reasons. First, they contend his appeal is a disguised challenge to the trial court's earlier orders (i.e., the order confirming the Interim Award, the Contempt Order, and the Enforcement Order), which Avedon did not appeal. Second, they contend Avedon failed to file his notice of appeal within 60 days of the court's April 20, 2021 minute order.

We conclude the appeal is timely. Avedon appeals from the trial court's grant of a preliminary injunction and does not seek reversal of any of the trial court's earlier orders. Nor was Avedon required to appeal the court's April 20, 2021 minute order to preserve the present appeal. That minute order directed that a revised order be prepared. Hence, it is the court's revised order granting the preliminary injunction, filed on June 2, 2021, that is the appealable order. (See Cal. Rules of Court, rule 8.104(c)(2) [stating that "if the minute order directs that a written order be prepared, the entry date is the date the signed order is filed"].)

16

*McDonald's Corp.* (2012) 205 Cal.App.4th 860, 866–867.) " 'The latter factor involves consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo.' " (*Id.* at p. 867.) "The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction." (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.)

"Generally, the ruling on an application for a preliminary injunction rests in the sound discretion of the trial court." (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286.) "We review an order granting a preliminary injunction under an abuse of discretion standard." (*People ex. rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109; see also *Teachers Insurance & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487, 1493 ["The decision [to grant a preliminary injunction] will only be reversed when the trial court has abused its discretion as to either factor."].)

"Notwithstanding the applicability of the abuse of discretion standard of review, the specific determinations underlying the superior court's decision are subject to appellate scrutiny under the standard of review appropriate to that type of determination." (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739.) "For instance, the superior court's express and implied findings of fact are accepted by appellate courts if supported by substantial evidence, and the superior court's conclusions on issues of pure law are subject to independent review." (*Ibid.*)

Importantly, "[t]he granting or denying of a preliminary injunction does not constitute an adjudication of the ultimate

rights in controversy." (*Cohen v. Board of Supervisors, supra*, 40 Cal.3d at p. 286.) "It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him." (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.) Indeed, "[t]he abuse-of-discretion standard acknowledges that the propriety of preliminary relief turns upon difficult estimates and predictions from a record which is necessarily truncated and incomplete. . . . The evidence on which the trial court was forced to act may thus be significantly different from that which would be available after a trial on the merits." (*Butt v. State of California, supra*, 4 Cal.4th at p. 678, fn. 8.)

## II. The trial court did not abuse its discretion in granting a preliminary injunction

### A. The injunction was preliminary, not permanent

Before reaching the merits of Avedon's appeal, we address the nature of the injunction at issue. The Regans contend the preliminary injunction is "more properly labeled a permanent injunction" because "[n]o trial is scheduled in this matter" and "no issue of Avedon's liability to the Regans remains to be determined." During oral argument, Avedon did not dispute that characterization of the injunction.

Even so, we decline to treat the injunction as permanent for purposes of this appeal. Although no trial is scheduled, it appears from both the trial court's minute order and the preliminary injunction that the trial court contemplated additional proceedings after the issuance of the injunction. In the court's April 20, 2021 minute order granting the injunction, the

court stated that "[t]he arbitrator and/or court is to determine compliance with the parties' agreement as to any new plantings." In the injunction itself, the court stated that "compliance with of [sic] the restrained parties as to any new plantings shall be determined by either the Court having jurisdiction of this dispute, or the Arbitrator . . . ." We understand these provisions as anticipating not only further proceedings to determine whether Avedon's new plantings violate the guidelines of the Interim Award and Contempt Order, but also whether revised guidelines may be warranted because of Avedon's 2021 landscaping plan.

That leads us to the second and related point: If we were to treat the injunction as permanent, it would supplant the potential role of the arbitrator in resolving the parties' dispute. As noted, the Amended Settlement Agreement endowed the arbitrator, not the court, with the authority to "interpret[] and enforce[]" Art Jury decisions. The Interim Award establishes that such authority includes some degree of discretion to determine the appropriate accommodation between Avedon's ability to plant new foliage in accordance with the Art Jury's approval of his landscaping plan, and the Regans's ocean views.[6] By confirming the preliminary nature of the trial court's injunction, we ensure the arbitrator retains the discretion granted him by the parties to finally resolve their current

---

[6]    Avedon contends that neither the Settlement Agreement nor Amended Settlement Agreement authorizes the arbitrator to "block any planting approved by the Art Jury." We need not resolve that issue, because the arbitrator has not yet reached any determination regarding Avedon's ability to implement his 2021 landscaping plan.

dispute.[7]  Of course, if the parties want the preliminary
injunction to be converted into a permanent one, nothing in this
decision prevents them from making that request in further
proceedings before the trial court.

### B.  The Regans demonstrated a likelihood of success on the merits

We conclude that the trial court correctly determined that
the Regans demonstrated "there is some possibility that [they]
would ultimately prevail on the merits of [their] claim." (*Butt v.
State of California, supra*, 4 Cal.4th at p. 678.)  Specifically, we
agree with the trial court that the Enforcement Order—which
authorized the trial court to oversee compliance with the Interim
Award and Contempt Order—applies both to existing and new
foliage, including the foliage at issue in Avedon's 2021
landscaping plan.[8]

---

[7]     Whether the parties will proceed to arbitration regarding
Avedon's 2021 landscaping plan is not clear.  According to
evidence submitted in opposition to the request for preliminary
injunction, Avedon asked the Regans to stipulate to submit their
dispute to arbitration.  The Regans's counsel responded that the
request was "not well-taken," but invited Avedon to file a motion
to compel arbitration.  At oral argument, counsel for Avedon
advised us that no arbitration proceeding is currently pending
between the parties.

[8]     Avedon contends that we must independently review the
trial court's interpretation of the Enforcement Order, Contempt
Order, Interim Award, and settlement agreements. While Avedon
may be correct about the scope of our review as a general matter,
we are cautious about intruding on the role of the arbitrator.  The
Amended Settlement Agreement provides that the arbitrator has

Avedon disagrees, contending that neither the Interim Award nor Contempt Order, nor the Enforcement Order based on them, extended beyond then-existing foliage. He thus argues that the trial court erred by concluding that the Enforcement Order "applies to all foliage—both the existing foliage and any new foliage which may be introduced to the area."

We agree with Avedon that the restrictions imposed by the Interim Award—for example, restricting Avedon's bamboo hedge to the height of the Regans's ficus hedge behind it, requiring him to maintain his olive and palm trees in a manner "that does not substantially impact [the Regans's] view," and requiring him to maintain his driveway hedge to preserve "a clear diagonal (down

---

"ultimate authority to enforce" the Settlement Agreement and Amended Settlement Agreement consistent with the four listed "guiding principles and documents," and that "[a]ny written order made by Judge Barrera or his successor"—including the Interim Award—"shall be deemed to be a part of this Agreement." We do not want to interfere with the arbitrator's primary role in enforcing the Interim Award and settlement agreements. Thus, for purposes of the preliminary injunction, we are satisfied that the trial court's interpretation of these agreements and orders was not erroneous.

Regarding the standard of review, the Regans argue that the standard of review applicable to permanent injunctions applies here, and that Avedon's allegedly mistaken application of the standard of review applicable to preliminary injunctions should result in us finding that he has forfeited his arguments. Given our view that the trial court's injunction was a preliminary one, we reject the Regans's argument. In any event, as is apparent from comparison of the parties' briefs, they agree on the applicable standards of review.

21

slope) line of sight from [the Regans's] property"—concerned the specific foliage at issue in Avedon's 2006 landscaping plan. We also agree with Avedon that the Contempt Order concerned that same foliage, which Avedon had failed to maintain in accordance with the Interim Award. Last, we agree with Avedon that the purpose of the Enforcement Order was to ensure that Avedon maintained that same foliage in accordance with the restrictions in the Interim Award and reaffirmed in the Contempt Order.

But we disagree with Avedon's further assertion that the restrictions imposed by the Interim Award and Contempt Order, made enforceable through the Enforcement Order, applied *only* to the then-existing foliage and no further. The purpose of the Interim Award was to balance Avedon's right to plant and maintain new foliage on his property in accordance with the 2006 landscaping plan, and the Regans's right to enjoy their ocean views. The arbitrator made that clear in describing the Interim Award as his effort to "reconcile and harmonize the determination of the Art Jury with preserving the ocean views" of the Regans.

The Contempt Order reaffirmed that balance, requiring Avedon to "perform consistent maintenance of the subject foliage and vegetation to remain in compliance with the Interim Award," including "by trimming or pruning the heights/breadths/densities of the respective foliage and vegetation at or below maximum limits as necessary." So too did the Enforcement Order, which created an enforcement mechanism for both the Interim Award and Contempt Order.

It would upend that balance to narrowly interpret the Interim Award, which is part of the Amended Settlement

Agreement,[9] and the Contempt Order and Enforcement Order following it, as imposing limits on then-existing foliage but no limits whatsoever on new foliage.  (See *Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620, 651 ["[W]e must interpret a contract in a manner that is reasonable and does not lead to an absurd result."]; *Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 259 [court strives to interpret contract "in a way that is both reasonable and carries out the intended purpose of the contract"].)  Under Avedon's interpretation of the Interim Award, Contempt Order, and Enforcement Order, he would be free to substantially impair the Regans's ocean views so long as he does so with new foliage rather than existing foliage.  We think the trial court reasonably rejected that interpretation of the Interim Award, Contempt Order, and Enforcement Order, which would have rendered their restrictions wholly ineffectual.

Relatedly, Avedon argues that the trial court erred by concluding that the purpose of the Enforcement Order (and thus the Interim Award and Contempt Order upon which it is based) "was to absolutely preserve the Regans' view to the detriment of Avedon's right to change his landscaping."  That contention is belied by the preliminary injunction, which permits Avedon to change his landscaping and restricts him only from planting new foliage "known to mature to an elevation" in excess of the Interim

---

[9]     As noted, the Amended Settlement Agreement provides that "[a]ny written order made by Judge Barrera or his successor"—which includes the Interim Award—"shall be deemed to be a part of this Agreement."

23

Award or Contempt Order.[10]  And as we have stressed already, the preliminary injunction does not prevent Avedon from returning to the arbitrator, who may determine that the restrictions in the Interim Award should be revised to accommodate the Art Jury's approval of his 2021 landscaping plan.  Nothing in our decision bars that outcome.

As is probably evident already, we also disagree with Avedon's argument that the trial court erred in granting the preliminary injunction because the Art Jury's approval of his 2021 landscaping plan is not subject to review by the court or the arbitrator, or otherwise restricted by the parties' settlement agreements.  According to Avedon, the Settlement Agreement and Amended Settlement Agreement preserved the parties' ability to petition PVHA and/or the Art Jury to modify their landscaping plans and established that the decisions of those bodies are final, binding, and non-appealable.  Thus, he argues that the trial court erred in determining that his 2021 landscaping plan "has to comport with the parties' private agreement and the outline set forth by the court in the prior orders."

True, the Settlement Agreement provides that "the Art Jury or PVHA's decision on any plantings proposed by the Parties shall be final and binding," and that the parties "shall not have

---

**10**     Avedon contends that this aspect of the injunction is overbroad because it restricts Avedon's ability to plant anything "that has the potential to exceed the limits set forth in the Interim Award or the Contempt Order, *even if it could be trimmed to stay within the specified limits*."  But Avedon has not requested that we limit the injunction in this respect.  Nor has he established that he first raised this concern to the trial court.

24

any right to appeal or to object in any way to the decisions of the Art Jury or PVHA and have knowingly and voluntarily waived any right to such an appeal or objection." Likewise, the Amended Settlement Agreement provides that "the parties remain free to petition the [PVHA]/Art Jury in order [to] modify their current landscape plan," and that those bodies "shall have full discretion and shall be the final arbiter as to whether or not to approve modifications to the landscaping plan of either party." If these were the final words on the subject, Avedon's arguments might have some force.

However, we must look to the whole of the parties' agreement. (See Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."].) The Amended Settlement Agreement, which was intended by the parties to "clarify and/or resolve certain ambiguities contained in the Settlement Agreement," provides that the "decision of the [PVHA]/Art Jury shall become binding and non-appealable, but shall be *interpreted and enforced through this agreement by retired Judge Barrera or his successor*." Thus, the parties agreed that the decisions of the PVHA and/or Art Jury *would* be subject to some degree of further review, at least with the arbitrator,[11] despite being "binding and non-appealable."

---

[11] Once an arbitrator renders an award, a party can petition a superior court to confirm the award. (Code Civ. Proc., § 1285.) If the superior court confirms the arbitration award, "judgment shall be entered in conformity therewith" and such judgment "may be enforced like any other judgment" of the court. (Code Civ. Proc., § 1287.4.) Hence, even the arbitrator's decision is

25

The Interim Award confirms that. It specifically rejected the argument that the Art Jury's approval of Avedon's 2006 landscaping plan "preempted further jurisdiction of [that] dispute by an arbitrator." Moreover, the superior court granted the Regans's petition to confirm the Interim Award notwithstanding Avedon's argument, similar to the one he raises here, that the arbitrator's power to "interpret[] and enforce[]" the Art Jury's 2006 decision did not include the authority "to make his own determination of what the height limits should be for [Avedon's] landscaping." As a result, we conclude the Art Jury's approval of Avedon's 2021 landscaping plan *is* reviewable in the manner described herein.

In sum, at least at this preliminary injunction stage, we affirm the trial court's conclusion that the Enforcement Order, which incorporated the provisions of the Interim Award and Contempt Order, applies both to existing and new foliage on Avedon's property.[12]

---

subject to further review—the Regans's petition to confirm the Interim Award proves that point.

[12] Because we affirm the trial court's preliminary injunction for these reasons, we do not reach the Regans's arguments that Avedon's appeal is barred by his failure to appeal the Interim Award or Contempt Order or barred by the doctrines of collateral estoppel and/or invited error. Nor do we address the second injunction factor, i.e., "the interim harm the plaintiff is likely to sustain if the injunction is denied as compared to the harm the defendant is likely to suffer if the court grants a preliminary injunction" (*Husain v. McDonald's Corp., supra*, 205 Cal.App.4th at pp. 866–867), because Avedon has not challenged that aspect of the trial court's order.

26

## III. Motion to strike

The Regans have moved to strike five purportedly "questionable factual statements" from Avedon's opening brief. Avedon opposes the motion, contending that each of the challenged statements is reasonably supported by record.

We deny the Regans's motion to strike. To the extent any of Avedon's challenged statements are not supported by the record, we disregard them. (See Cal. Rules of Court, rule 8.204(e)(2)(C).)

## DISPOSITION

We affirm the trial court's order granting a preliminary injunction. We deny the Regans's motion to strike. The parties shall each bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.

27