Filed 12/16/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MAJESTIC ASSET MANAGEMENT LLC et al., | D082407, D082907 |
| Plaintiffs, Cross-defendants, and Appellants, | (Super. Ct. No. RIC1213939) |
| v. | |
| THE COLONY AT CALIFORNIA OAKS HOMEOWNERS ASSOCIATION, | |
| Defendant, Cross-complainant, and Respondent; | |
| JEN HUANG et al., | |
| Cross-defendants and Appellants. | |

CONSOLIDATED APPEALS from orders of the Superior Court of Riverside County, Irma P. Asberry and Eric A. Keen, Judges. Affirmed as modified.

Reid & Hellyer, Michael G. Kerbs and Jenna L. Acuff for Plaintiffs, Cross-defendants, and Appellants.

Berding & Weil, Anne L. Rauch, Trinette Sachrison; Epsten and Joseph A. Sammartino for Defendant, Cross-complainant, and Respondent.

Majestic Asset Management, LLC, Wintech Development, Inc., Hai Huang, and Jen Huang appeal a postjudgment decree directing a foreclosure sale of a golf course they own and operate after they violated a judgment directing them to perform maintenance obligations whose performance was secured by a deed of trust in favor of The Colony at California Oaks Homeowners Association. Appellants also appeal a prior related postjudgment order determining the value of the security interest for purposes of the foreclosure sale. They contend the trial court erroneously determined the value and erroneously ruled they would remain bound to perform the secured maintenance obligations should they pay the value to keep the property. We modify the foreclosure decree to reduce the value of the security interest and affirm the decree as modified.

## I.
## BACKGROUND

A. *Parties*

The Colony at California Oaks Homeowners Association (the Association) is the governing body of The Colony at California Oaks, a gated community of 1,586 single-family homes in Murrieta. Within the community is an 18-hole golf course with landscaped extensions called "fingers" that create open space among the homes. In 2007, the prior owners sold the golf course to Majestic Asset Management, LLC (Majestic), and sold related personal property to Wintech Development, Inc. (Wintech). Hai Huang and Jen Huang are married to each other and own and manage the affairs of Majestic and Wintech.

2

B.    *Secured Maintenance Obligations*

By the terms of the purchase agreement between Majestic and the prior owners, Majestic assumed the obligations of the prior owners to use the property only as a golf course, to maintain it in at least as good condition as that of other similar golf courses in the area, and to maintain and water the fingers in a manner acceptable to the Association.  The grant deed by which Majestic acquired title to the property contained the same use restriction and maintenance obligations.  As part of its purchase of the golf course, Majestic executed a performance deed of trust (PDOT) by which it granted in trust for the prior owners' benefit its interest in the golf course as security for its observance of the use restriction and performance of the maintenance obligations it had assumed from the prior owners.  In 2012, the prior owners assigned their interest in the deed of trust to the Association.

C.    *First Round of Litigation*

After appellants took over the golf course, grass and trees died, a lake dried up, and landscaping otherwise deteriorated, and appellants began using the site for events of which the Association disapproved.  Appellants also stopped paying their portion of certain maintenance costs shared with the Association.

Litigation over appellants' rights and obligations concerning the golf course commenced in 2013.  Majestic and Wintech sued the Association for interference with prospective economic advantage, misrepresentation, promissory estoppel, declaratory relief, and quiet title.  The Association cross-complained against Majestic, Wintech, and the Huangs for breaches of contracts and deeds, common counts, declaratory relief, quiet title, and foreclosure under the PDOT.  The Association alleged the Huangs were alter egos of Majestic and Wintech.

3

In 2015, the trial court held a bench trial during which Majestic and Wintech dismissed their declaratory relief and quiet title counts with prejudice. In a written statement of decision, the court found the Huangs were alter egos of Majestic and Wintech and ruled in favor of the Association and against appellants on the remaining counts of the complaint and on all counts of the cross-complaint. The court specifically ruled appellants were bound by the provisions in the contracts and deeds requiring them to use the golf course only as such, to maintain it at least as well as similar golf courses in the area were maintained, and to water and maintain the fingers, and found appellants had breached those provisions. Although the court acknowledged the PDOT authorized foreclosure, it "decline[d] to order foreclosure of the golf course property at this time" and determined "injunctive relief would be the more appropriate remedy."

On March 8, 2016, the trial court entered a judgment consistent with its statement of decision. The judgment included a permanent injunction directing appellants, among other things, to repair and to restore the golf course and its associated open spaces, lakes, ponds, and creeks within six months; and within the same time to implement, and then to continue to abide by, the maintenance standards attached to the judgment. In the judgment, the court expressly retained jurisdiction to enforce the injunction and to order foreclosure under the PDOT if appellants disobeyed the injunction.

On appellants' appeal, we affirmed the judgment. In doing so, we rejected their argument the use restriction and maintenance obligations expired in 2015, and held they "continue in effect so long as [appellants] own the [golf course]." (*Majestic Asset Management, LLC v. The Colony at*

4

*California Oaks Homeowners Assn.* (May 10, 2018, D072627) [nonpub. opn.].) The remittitur issued on July 26, 2018.

D.    *Second Round of Litigation*

In June 2019, the Association moved the trial court to enforce the judgment based on appellants' disobedience of the permanent injunction. It sought an order directing a foreclosure sale of the golf course or, alternatively, an order appointing a receiver to take control of the golf course and bring it into compliance with the judgment.

In opposition to the motion, appellants argued they had attempted to comply with the judgment, but full compliance was impractical and unreasonable due to factors beyond their control, including declines in the golf industry, increases in operating costs, and restrictions on water usage. They further argued foreclosure was "a draconian remedy" that would not benefit the parties, and appointment of a receiver was "a 'drastic remedy' " that would cause unnecessary expense and hardship.

The trial court held an evidentiary hearing on the Association's motion to enforce the judgment over two days in January 2020. The court found appellants had failed substantially to comply with the terms of the judgment concerning restoration, operation, and maintenance of the golf course. By order dated March 12, 2020, the court appointed a receiver to take control of the golf course to bring it into compliance with the judgment.

After two and one-half years, it became clear the receiver could not rehabilitate the golf course; and in September 2022, the Association moved the trial court to order foreclosure pursuant to the PDOT. The court found judicial foreclosure was appropriate, ordered the parties to brief the issues of how the PDOT should be valued for purposes of the foreclosure sale and

5

whether appellants would have a postsale right of redemption, and set an evidentiary hearing on those matters.

In its briefs, the Association argued appellants would have no right to redeem the golf course after the foreclosure sale, because there is no such right in a judicial foreclosure proceeding unless the foreclosing party seeks a deficiency judgment and it was not going to do so. It further argued a foreclosure sale of the property would not extinguish the PDOT, for it would be "absurd" to recognize a right of redemption that would allow appellants to obtain title to the golf course free of the maintenance obligations secured by the PDOT. The Association argued the value of the PDOT for purposes of the foreclosure sale was the cost to perform the secured obligations, not the value it paid to acquire the PDOT. The appropriate value in this case, it contended, was the cost of repairing and maintaining the golf course as required by the judgment.

In their briefs, appellants argued they had a statutory right to redeem the golf course before or after the sale, it would not be absurd to allow them to exercise that right, and equitable considerations weighed in favor of allowing them to redeem. They further argued their exercise of the right of redemption would be equivalent to performance of the maintenance obligations and would extinguish the PDOT. On the valuation issue, appellants contended the PDOT was worth $0 because it had no intrinsic or market value and performance of the secured maintenance obligations was excused as impossible or impracticable. They alternatively contended the value was at most $3,000, which they asserted was the amount the Association had paid for the assignment of the PDOT by its prior owners.

The trial court held an evidentiary hearing on two days in March 2023 during which the parties presented testimony from expert witnesses. The

6

Association called as its expert Jon Christenson, the corporate director of golf course maintenance for a company that managed 11 golf courses in Southern California. He had 40 years of experience in the golf industry, including 34 years superintending golf courses. Christenson inspected the golf course at The Colony at California Oaks on four occasions, reviewed the judgment, and estimated the cost to bring the golf course into compliance with the judgment was $2,503,500. He testified the necessary repairs could be completed and the golf course made profitable in three years at a monthly management cost of $12,000. Appellants called as their expert Larry Taylor, the chief executive officer of a company that owned six golf courses in Southern California. He had 50 years of experience in the golf industry, including 20 to 25 years buying and selling golf courses. Taylor visited the golf course at The Colony at California Oaks on two occasions and reviewed the PDOT. In his opinion, the PDOT had no value because no operator could perform the secured maintenance obligations and generate enough revenue to make a profit.

By order filed on May 18, 2023, the trial court rejected appellants' position the value of the PDOT was $0 or, alternatively, no more than the $3,000 the Association paid to acquire it. The court ruled appellants could not rely on the doctrine of impossibility to excuse performance of the secured maintenance obligations, because their "own acts and omissions that span over more than a decade . . . created the conditions which have made performance difficult." The court concluded the value of the PDOT was that of "having a professionally-maintained golf course within the [Association]," and appellants' failure to provide that value should be evaluated as an "injury to real property." The court stated that although the measure of damages for such an injury ordinarily is the difference between the market value of the property before and after the injury, another permissible

7

measure is the reasonable costs to repair or restore the property. Using the latter measure and the Association's evidence, the court found the value of the PDOT was the $2,503,500 that Christenson testified was needed to repair the golf course plus the monthly management fee of $12,000 for the three years he testified was needed to complete the repairs and make the golf course profitable. The court discounted the management fees to a present value of $244,934.37, and set the value of the PDOT for purposes of the foreclosure sale at $2,748,434.37. The court also stated that "even if [appellants] redeem[ ] the [p]roperty, [they] will nevertheless remain subject to the [j]udgment and [p]ermanent [i]njunction."

Based on the determinations made in the May 18, 2023 order, the trial court on August 29, 2023, entered a decree foreclosing the PDOT and directing the clerk to issue a writ of sale of the golf course by the sheriff.[1] The decree stated the value of the PDOT was $2,748,434.37, which was to be included in the Association's credit bid; and if appellants were to "redeem[ ]" the golf course by paying that amount, the payment would constitute partial performance under the PDOT and they would remain subject to the PDOT and the judgment and permanent injunction for as long as they own the property.[2] The decree further stated that if appellants cured their default,

---

[1]     The foreclosure decree is labeled a "judgment." We call it a "decree" to conform to the terminology of the judicial foreclosure statute (Code Civ. Proc., § 726, subd. (b)). Also, a judgment was entered on March 8, 2016, and ordinarily there can be only one judgment in an action. (*Nicholson v. Henderson* (1944) 25 Cal.2d 375, 378; *Soni v. Cartograph, Inc.* (2023) 90 Cal.App.5th 1, 9.) For purposes of appealability, we treat the decree as a postjudgment order enforcing the judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); *Keitel v. Heubel* (2002) 103 Cal.App.4th 324, 339, fn. 2.)

[2]     Use of the word "redeem" in the foreclosure decree was imprecise. "The term 'redemption' refers to two separate rights given to the trustor and

8

the money would be paid to the Association and used for restoration and maintenance of the golf course. On September 25, 2023, the court amended the decree nunc pro tunc to attach as an exhibit the PDOT, which had been identified as an exhibit but inadvertently omitted.

Appellants filed separate notices of appeal from the May 18, 2023 order and the August 29, 2023 foreclosure decree.[3] We consolidated the appeals.

---

others who have an interest in the property to save the encumbered property from loss after default. The 'equity of redemption' refers to the ability of any person having an interest in real property subject to a lien to extinguish the lien by payment of the debt, plus costs and damages, at any time after the debt is due and before the property is sold at a foreclosure sale. [¶] 'Statutory redemption' refers to the ability of the trustor or the trustor's successors-in-interest to recover the property after a judicial foreclosure sale. [¶] These redemption rights are to be distinguished from the right of 'reinstatement,' which is the statutory right to terminate foreclosure proceedings by paying or 'curing' the default." (5 Miller & Starr, Cal. Real Estate (4th ed. 2024) § 13:154, p. 577 (Miller & Starr).) The right the trial court granted appellants to keep the golf course is more like reinstatement than redemption. We therefore use the terminology associated with reinstatement rather than redemption.

[3] The Association filed a motion to dismiss the appeal from the May 18, 2023 order as premature. Appellants filed opposition, and the Association filed a reply. We ordered the motion considered concurrently with the appeal. In its brief on the merits, the Association asserts the appeal from the foreclosure decree moots the motion. Because we may treat a premature notice of appeal as having been taken from a subsequent appealable order or judgment (Cal. Rules of Court, rule 8.104(d)(2); *Turpin v. Sortini* (1982) 31 Cal.3d 220, 224, fn. 2) and may review an intermediate order affecting a final order on appeal from the final order (Code Civ. Proc., § 906; *In re Marriage of Tim & Wong* (2019) 32 Cal.App.5th 1049, 1055–1056), we agree with the Association the motion to dismiss is moot and therefore deny it. We treat the appeal as having been taken from the foreclosure decree and review the May 18, 2023 order as necessary to determine the correctness of the decree.

9

## II.

## DISCUSSION

A. *Parties' Contentions*

Appellants attack the foreclosure decree on two grounds. First, they argue that in valuing the PDOT the trial court erroneously tried to make the Association whole by using a tort measure of damages for injury to real property, namely, cost of repair. Second, appellants argue the trial court erroneously ruled they would continue to be bound to perform the secured maintenance obligations should they pay the value set by the court and retain ownership of the golf course. Appellants ask us to vacate the challenged order and to remand the matter with instructions to the trial court to enter a new order: (1) determining the value of the PDOT based on its "demonstrable historical and beneficial value or fair market value"; and (2) stating that "upon [their] exercise of the right of redemption or through the process of foreclosure, the [judgment] is satisfied and [they] are no longer subject to the injunction set forth therein."

The Association contends appellants forfeited their appeal by failing to provide an adequate record and failing to include in their opening brief a full and fair summary of the facts and proceedings that led to the foreclosure decree. On the merits, the Association argues the trial court correctly used the cost to repair the golf course to assign a value to the PDOT for purposes of the foreclosure sale, and correctly ruled appellants' payment of that amount to keep the golf course would not extinguish their maintenance obligations going forward. The Association asks us to affirm the decree and to award it costs and attorney fees.

10

B.	*Forfeiture*

We reject the Association's contention appellants forfeited their appeal based on alleged deficiencies in the record and opening brief. The documents and information relevant to our resolution of appellants' claims of error are contained in their appendix or in the designated reporter's transcripts. Appellants' opening brief contains a summary of the facts and trial court proceedings that sufficed for us to understand the nature of the case and the issues involved in the appeal. (See Cal. Rules of Court, rule 8.204(a)(2)(C) [appellant's opening brief must "[s]tate the nature of the action" and contain "a summary of the significant facts"]); *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113 [appellant's opening brief should include "all of the operative facts that affect the resolution of issues tendered on appeal"].) Although much shorter than the Association's factual and procedural summary, appellants' summary neither misrepresented the record nor otherwise misled us such that we should deem their appeal forfeited. (See *Perry v. Kia Motors America, Inc.* (2023) 91 Cal.App.5th 1088, 1095–1096 [misrepresentation of record may forfeit claim of error]; *Good v. Miller* (2013) 214 Cal.App.4th 472, 477 [brief that misled appellate court "militate[d] sharply against granting [appellant] relief"].) We thus proceed to the merits.

C.	*Standard of Review*

An action for foreclosure under a deed of trust is a proceeding in equity in which the court has broad powers to grant appropriate relief as needed to protect the parties' rights. (*Cummins v. Bank of America* (1941) 17 Cal.2d 846, 849; *Nelson v. Orosco* (1981) 117 Cal.App.3d 73, 76.) We review rulings based on equitable considerations for abuse of discretion. (*Petrolink, Inc. v. Lantel Enterprises* (2022) 81 Cal.App.5th 156, 166; *Robin v. Crowell* (2020) 55 Cal.App.5th 727, 738; *Estates of Collins & Flowers* (2012) 205 Cal.App.4th

11

1238, 1246.)  "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence; its conclusions of law are reviewed de novo; and its application of the law to the facts is reversible only if arbitrary and capricious."  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted; accord, *Robin*, at p. 739.)  We affirm the trial court's ruling if it is supported by substantial evidence and falls within the range of permissible options under the governing legal criteria.  (*Estates of Collins & Flowers*, at p. 1246.)

D.     *Valuation of PDOT*

Appellants contend the trial court erred by using the cost to repair the golf course as the value of the secured maintenance obligations for purposes of foreclosure under the PDOT.  They complain the court "cite[d] no authority supporting this position and provide[d] no analysis or justification why, in a foreclosure of a [PDOT], value should be measured by a tort remedy given to a beneficiary [that] does not own the real property and, upon receipt of the funds from foreclosure, need not invest back into the real property."  Appellants argue the value the court should have used was either:  (1) the benefit to the Association of performance of the maintenance obligations secured by the PDOT, a benefit they say did not exist because no operator could perform the obligations and still make a profit; or (2) the fair market value of the PDOT, which they say was at most the $3,000 the Association paid for the assignment by the prior owners.  As we shall explain, the trial court correctly rejected appellants' position on the value of the PDOT and properly used as the value the cost to put the golf course in the condition it would have been in had appellants performed the secured maintenance obligations.  The court erred, however, by also including in the value of the

12

PDOT the present value of three years' worth of professional fees to manage the golf course.

A deed of trust is " 'practically and substantially only [a] mortgage[ ] with a power of sale . . . .' " (*Monterey S. P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460.)  "A mortgage is a contract by which specific property . . . is hypothecated for the performance of an act, without the necessity of a change of possession."  (Civ. Code, § 2920, subd. (a).)  A deed of trust thus creates a lien on property to secure the performance of some act. (*Monterey S. P. Partnership*, at p. 460; *Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 258 (*Dieckmeyer*).)  The performance "most often secured is payment of a note." (*Dieckmeyer*, at p. 258.)  But "a mortgage on either chattels or real property, given as security for the performance of a contract, is valid and proper, and may stand as security for such performance."  (*Stub v. Belmont* (1942) 20 Cal.2d 208, 213 (*Stub*).)  The PDOT created a lien on the golf course to secure performance of the maintenance obligations appellants assumed when they bought the property from the prior owners, and it gave the prior owners the right to foreclose and sell the golf course if appellants did not perform the obligations. As the assignee of the prior owners under a recorded assignment, the Association now has that right.  (Civ. Code, § 2932.5; *Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 744.)

Enforcement of the right to foreclose under a deed of trust presents "several practical problems" where, as here, the deed "secure[s] nonmonetary obligations" rather than repayment of a loan.  (Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2024) ¶ 6:364, p. 116.)  If the secured obligation "cannot be reduced to money terms by its own provisions, either by virtue of a liquidated damages clause or otherwise,

13

the trustor would not be able to [cure the default to avoid loss of the property], and the beneficiary would not be able to make a monetary bid [at the foreclosure sale] or determine the amount of its debt or loss.  [¶] Therefore, if the secured obligation is not measurable in monetary terms, . . . [e]nforcement of the lien may not be possible except by judicial proceedings, where the obligation can be reduced to monetary terms by the court.”  (5 Miller & Starr, *supra*, § 13:11, p. 65.)

To satisfy the requirement that the decree in a judicial foreclosure action “shall declare the amount of the indebtedness or right so secured” (Code Civ. Proc., § 726, subd. (b)), the trial court adopted a measure of damages used in cases of tortious injury to real property, namely, “the reasonable cost of repair or restoration of the property to its original condition.”  (6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1913, p. 1365; see *Armitage v. Decker* (1990) 218 Cal.App.3d 887, 905 [one “measure of damages for tortious injury to property” is “cost of repair or restoration”].)  As appellants point out, however, tort law does not govern, because the injured property, i.e., the golf course, belongs to them, not the Association; and they committed a breach of contract by failing to perform the maintenance obligations secured by the PDOT, not a tort.  The PDOT “st[oo]d as security for such performance” and “therefore [was] security for damages for breach of contract.”  (44 Cal.Jur.3d (2024) Mortgages, § 5.)  The court thus improperly relied on a tort measure of damages rather than on a contract measure to value the PDOT for purposes of the foreclosure sale.  (See *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515 (*Applied Equipment Corp.*) [omission to perform contractual obligation is never tort unless it is also omission of legal duty]; *Messer v. Hibernia Sav. etc. Society* (1906) 149 Cal. 122, 128 [“equity follows the law as to the rule of

14

damages"].) Such reliance does not require reversal, however, because for reasons we give below the contract measure yields the same $2,503,500 the court found to be the cost of repair.

"Contract damages seek to approximate the agreed-upon performance." (*Applied Equipment Corp., supra*, 7 Cal.4th at p. 515.) They are awarded "to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." (*Coughlin v. Blair* (1953) 41 Cal.2d 587, 603; accord, *Moore v. Centrelake Medical Group, Inc.* (2022) 83 Cal.App.5th 515, 531.) "A recognized measure of damages for the breach of contract to render service is the reasonable cost of securing performance by other means." (*McOmber v. Nuckols* (Idaho 1960) 353 P.2d 398, 400 (*McOmber*); see *Brumfield v. Crocker-Anglo Nat. Bank* (1960) 185 Cal.App.2d 759, 764 [plaintiff entitled to cost of counsel when defendant breached agreement to defend plaintiff in lawsuit]; cf. *Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 41–42 [cost to repair defects in house used as measure of damages for breach of warranty that house would be defect-free]; *Kalal v. Goldblatt Brothers, Inc.* (Ill.App.Ct. 1977) 368 N.E.2d 671, 674 (*Kalal*) [measure of damages for defective performance of contract for services is cost to remedy deficiencies].) The Association presented evidence it would cost $2,503,500 to do the work needed to put the golf course in the condition it would have been in had appellants properly performed the maintenance obligations secured by the PDOT, and the trial court found that amount (which it called "cost of repair") constituted the reasonable value of performance of the obligations.[4] Although the court erroneously used tort

---

[4]     We reject appellants' contention the cost of performing the secured maintenance obligations was "irrelevant" because, they say, the Association agreed the PDOT had no value. As support for this contention, appellants take out of context the Association's statements in briefs filed in the trial

15

law rather than contract law, it reached the right result. "[I]t is judicial action, and not judicial reasoning or argument, which is the subject of review; and, if the former be correct, we are not concerned with the faults of the latter." (*Davey v. Southern Pac. Co.* (1897) 116 Cal. 325, 330; accord, *Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1397.)

The trial court did err, however, by including as part of the value of the PDOT the present value of three years' worth of fees for professional management of the golf course. The PDOT secured appellants' performance of obligations assumed from the prior owners of the golf course, including the obligations to maintain it at least as well as similar golf courses in the area are maintained and to water and to maintain the fingers. (See pt. I.B., *ante*.) Appellants assumed no obligation to employ a professional manager to operate the golf course or to ensure the golf course would be "profitable" or "self-sustaining." Because the Association had no right to performance of such obligations under the PDOT, the court erroneously included in the value of the PDOT the "cost of managing the [g]olf [c]ourse until it becomes self-sustaining." The $244,934.37 the court found to be the present value of professional management fees of $12,000 per month until the golf course "become[s] self-sustaining in three years" must be eliminated from the value of the PDOT. The value for purposes of the foreclosure sale is limited to the value of performance of the obligations to which the Association had a right

court that the PDOT had "no intrinsic monetary value" and "no marketable value." Those statements were made as part of the Association's argument that because the PDOT did not secure payment of a debt, there could be no deficiency judgment that would give appellants a statutory right to redeem the golf course after the foreclosure sale. Elsewhere in its briefs, the Association argued the value of the PDOT was the cost to perform the secured maintenance obligations.

16

to performance under the PDOT and which appellants did not perform. (See *Moore, supra*, 83 Cal.App.5th at p. 531 [nonbreaching party entitled to benefit of bargain that full performance would have provided]; *McOmber, supra*, 353 P.2d at p. 400 [nonbreaching party may recover reasonable cost of obtaining services from alternate provider]; *Kalal, supra*, 368 N.E.2d at p. 674 [breach of contract damages should not provide windfall to nonbreaching party].) That value is the $2,503,500 the trial court found was the reasonable cost of doing the work needed to put the golf course in the condition it would have been in had appellants performed the secured maintenance obligations.

Appellants disagree the PDOT had even that much value. They contend it was worthless, or, alternatively, worth no more than $3,000. We are not persuaded.

Appellants argue the PDOT had no value because the "financial distress" during the 16 years they or the receiver operated the golf course made performance of the secured maintenance obligations "economically not viable" and thus excused performance as "demonstrably impossible." Impossibility of performance is a defense the party asserting it must prove and includes " 'not only strict impossibility but [also] impracticability because of extreme and unreasonable difficulty, expense, injury, or loss involved.' " (*Oosten v. Hay Haulers etc. Union* (1955) 45 Cal.2d 784, 788 (*Oosten*); accord, *SVAP III Power Crossings, LLC v. Fitness Internat., LLC* (2023) 87 Cal.App.5th 882, 893.) Appellants presented no evidence performance of the secured maintenance obligations is strictly impossible, i.e., " 'cannot by any means be effected.' " (*Sample v. Fresno Flume & Irr. Co.* (1900) 129 Cal. 222, 228.) Christenson, the Association's expert witness whose testimony the trial court credited, testified that for $2,503,500 the golf course could be put

17

in the condition it would be in had appellants properly performed the obligations. Although that is a substantial sum of money, as the trial court noted appellants presented no "persuasive evidence as to whether the expense is truly excessive and unreasonable" such that performance should be excused as impracticable. "A party cannot 'avoid performance simply because it is more costly than anticipated or results in a loss.' " (*KB Salt Lake III, LLC v. Fitness Internat., LLC* (2023) 95 Cal.App.5th 1032, 1059; see *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 839 ["economic crises do not excuse performance on a contract"].)

There is another reason appellants may not rely on the defense of impossibility to excuse their performance of the secured maintenance obligations and thereby render the PDOT worthless. A party whose own act or omission makes performance impossible or impracticable may not assert such impossibility or impracticability to excuse performance. (*Oosten, supra*, 45 Cal.2d at p. 789; *Pacific Venture Corp. v. Huey* (1940) 15 Cal.2d 711, 717; *Maudlin v. Pacific Decision Sciences Corp.* (2006) 137 Cal.App.4th 1001, 1017; Rest.2d Contracts, § 261 & com. d, pp. 313, 316.) Appellants' neglect of their maintenance obligations over many years led to the situation where it will now cost more than $2.5 million to put the golf course in the condition it would have been in had appellants performed the obligations. "A party cannot by its own act place itself in a position to be unable to perform a contract, then plead that inability to perform as an excuse for nonperformance." (*Farmers' Elec. v. Mo. Dept. of Corrections* (Mo. 1998) 977 S.W.2d 266, 271; see *Oosten*, at p. 789 [to excuse performance, party must show " 'that, in spite of skill, diligence and good faith on his part, performance became impossible or unreasonably expensive' "].) Since "it is clear that [appellants] created the conditions which have made performance

18

difficult," as the trial court found, they may not rely on that difficulty to excuse performance and thereby render the PDOT valueless.

We also reject appellants' factually and legally unsupported alternative argument the PDOT was worth no more than the $3,000 the Association allegedly paid to acquire it "in an arms-length transaction" with the prior owners of the golf course, which they say "represents [its] fair market value." Appellants cite no evidence in the record to support their factual assertions that $3,000 was the purchase price, the purchase was an arms-length transaction, or $3,000 represents the fair market value of the PDOT. They cite only similar unsupported assertions in briefs they submitted to the trial court regarding the value of the PDOT. "These unsworn averments in a memorandum of law prepared by counsel do not constitute evidence." (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 454.) In any event, the purchase price of a deed of trust does not determine the amount of the secured obligation. (See *Wright v. Rogers* (1959) 172 Cal.App.2d 349, 364–365 [purchase of note and deed of trust at discount did not reduce debtor's obligation].) Hence, even if the Association did buy the PDOT for $3,000, that amount would not establish its value for purposes of the foreclosure sale.

The only legal authority appellants cite in support of their alternative argument is a case stating that "foreclosing senior encumbrancers are to receive at most the fair market value of their security plus deficiency if any." (*Eastland S. & L. Assn. v. Thornhill & Bruce, Inc.* (1968) 260 Cal.App.2d 259, 261.) At issue in that case was a deed of trust that secured payment of a promissory note. (*Id.* at p. 260.) Although that type of security has an established market (see *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 927 [promissory note is negotiable instrument from which

19

securing deed of trust is inseparable]; *id.* at p. 930, fn. 5 [describing securitization of notes and deeds of trust]), the record contains no evidence there is a market for a security like the PDOT, which secures performance of a nonmonetary obligation. Because "[a] deed of trust has no market or ascertainable value, apart from the obligation it secures" (*Buck v. Superior Court* (1965) 232 Cal.App.2d 153, 158), the value of a deed of trust that secures performance of a nonmonetary obligation is the value of performance to the beneficiary. That value is the $2,503,500 the trial court found it would cost to put the golf course in the condition it would have been in had appellants performed the maintenance obligations secured by the PDOT.

E.  *Survival of Maintenance Obligations*

Appellants contend the trial court erred by ruling they will remain bound by the judgment to perform the maintenance obligations secured by the PDOT if they pay the value the court gave the PDOT for purposes of the foreclosure sale and keep the golf course. They argue that for the court "to now find that the [judgment] and injunction survive redemption and foreclosure proceedings defies the strictures of foreclosure law, violates the one form of action rule, and rewrites the terms of the [judgment]."[5] We consider, and reject, each of these three grounds in turn.

First, appellants contend the trial court's ruling contradicts "the entire legislative foreclosure scheme." Citing *Winnett v. Roberts* (1986)

---

[5]  As a fourth ground appellants argue in their reply brief that the trial court violated the rule that "[o]nce there is a judgment, contractual rights are merged into and extinguished by the terms of the judgment." We decline to consider this ground because appellants unfairly deprived the Association of the opportunity to counter it by not raising it in the opening brief. (See, e.g., *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 559; *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.)

20

179 Cal.App.3d 909, 922 (*Winnett*), they contend "a tender of the full amount secured by a trust deed extinguishes the lien on the property [citation], calls a halt to the foreclosure proceedings, and discharges both the obligation and the security, thus entitling the trustor to a full reconveyance of the property." *Winnett* concerned the "equity of redemption" we mentioned earlier (see fn. 2, *ante*), which gives a trustor in default the right to extinguish the lien by *full performance* of the obligations secured by the deed of trust at any time after performance is due and before the property is sold at a foreclosure sale. (Civ. Code, §§ 2903, 2905; *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 440; 5 Miller & Starr, *supra*, § 13:239, pp. 964–967.) In *Winnett*, the court held the trustors' tender of "*payment in full of the underlying debt*" before the foreclosure sale "discharged both the obligation and the security" and "entitled [the trustors] to a full reconveyance of the property." (*Winnett*, at p. 922, italics added.)[6] *Winnett* is not on point.

---

[6] Appellants cite other authorities to the same effect. (See, e.g., Civ. Code, § 2910 [sale of property in satisfaction of claim secured by lien on property extinguishes lien]; *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 [since security interest cannot exist without underlying obligation, payment or sale of property in amount that satisfies lien extinguishes mortgage or deed of trust]; *Duarte v. Lake Gregory Land & Water Co.* (1974) 39 Cal.App.3d 101, 105 [sale of property that secured debt for full amount of debt extinguishes debt and security interest].) They also cite statutes concerning extinction of liens when a trustor redeems property after a foreclosure sale. (See Civ. Code, §§ 710.630, 729.080.) Those statutes are irrelevant to this appeal because appellants have no postsale right of redemption. That right exists only if a foreclosure decree determines a deficiency judgment may be ordered against the trustor. (Code Civ. Proc., §§ 726, subd. (e), 729.010, subd. (a); *Alliance Mortgage Co.*, at p. 1236; 5 Miller & Starr, *supra*, § 13:276, p. 1194.) The trial court's decree made no such determination, and the Association waived the right to seek a deficiency judgment.

21

Unlike the payment of the entire outstanding indebtedness at issue in *Winnett, supra*, 179 Cal.App.3d 909, appellants' payment of the value the trial court gave the PDOT for foreclosure purposes (which we have reduced to $2,503,500) would *not* constitute *full performance* of the outstanding maintenance obligations.  It would be the equivalent of *partial performance*, up to the date of valuation, of obligations we held in the prior appeal appellants must perform as long as they own the golf course.  Partial performance of obligations secured by a lien does not extinguish the lien.  (Civ. Code, § 2912; see *Stub, supra*, 20 Cal.2d at p. 215 [repayment of loan secured by mortgage that also secured performance of five-year consignment contract did not entitle debtor to satisfaction of mortgage because it still secured performance of contract during term thereof]; *Dieckmeyer, supra*, 127 Cal.App.4th at p. 258 [trustor not entitled to reconveyance of deed of trust upon repayment of loan when deed secured not only repayment but also performance of other obligations trustor remained bound to perform].)  We thus reject appellants' contention the injunction requiring them to perform the secured maintenance obligations "cannot survive foreclosure proceedings and the [t]rial [c]ourt erred in holding otherwise."

Second, appellants argue that requiring them to continue to perform the secured maintenance obligations if they cure their default violates the one form of action rule.  "There can be but one form of action for the . . . enforcement of any right secured by mortgage upon real property . . . , which action shall be in accordance with the provisions of this chapter."  (Code Civ. Proc., § 726, subd. (a).)  "The one form of action is a foreclosure action [citation], in which the creditor must first exhaust the security before seeking any monetary judgment for the deficiency [citation]."  (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1396.)  The purposes of the one form

of action rule are to prevent multiple lawsuits against the debtor and to require exhaustion of the security before resort to the debtor's other assets. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 1005.) The rule does not "bar entry of more than one final determination in a foreclosure action." (*Kinsmith Financial Corp. v. Gilroy* (2003) 105 Cal.App.4th 447, 453.) The Association has not filed multiple actions against appellants to enforce its rights under the PDOT. By a cross-complaint filed in the action appellants commenced, the Association sought, among other remedies, foreclosure under the PDOT. In that action, the trial court entered a final judgment enjoining appellants to perform the secured maintenance obligations. And, after appellants violated that injunction, the court entered a final order directing a foreclosure sale of the golf course and allowing appellants to avoid the loss of the property by paying the value the court assigned the PDOT and remaining subject to the secured maintenance obligations. Although the Association sought and obtained multiple judicial determinations to enforce its rights under the PDOT, because it did so in a single action in which it sought foreclosure it did not violate the one form of action rule.

Third, appellants claim that by stating in the foreclosure decree that the injunction to perform the maintenance obligations secured by the PDOT will remain in effect if they cure their default and keep the golf course, the trial court "acted in excess of its jurisdiction by effectively creating a new judgment." They rely on the general rule that a court loses jurisdiction to modify a judgment after entry. (E.g., *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1237 [stating general rule and listing exceptions for correction of clerical errors and certain statutory motions].) The court did not violate that rule by conditionally retaining the injunction in

the foreclosure decree. It merely effectuated our holding in the prior appeal that appellants must perform the secured maintenance obligations as long as they own the golf course. (See, e.g., *Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 612 [rule of law decided in prior appeal governs parties' rights in later proceeding in same case]; *Lindsey v. Meyer* (1981) 125 Cal.App.3d 536, 541 [trial court must "follow principles laid down upon a former appeal in the same case, whether those earlier pronouncements are right or wrong"].) By also directing a foreclosure sale, the court exercised the jurisdiction it had expressly retained in the judgment to grant that remedy if appellants disobeyed the injunction. "Every court has power to compel obedience to its judgments and orders [citation], and a court of equity retains inherent jurisdiction to oversee and enforce execution of its decrees." (*Brown v. Brown* (1971) 22 Cal.App.3d 82, 84.)

The decree the trial court fashioned fell within its equitable jurisdiction to make additional orders to enforce the judgment (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1161) and "to fashion 'new remedies to deal with novel factual situations' " (*Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1045). By giving appellants another opportunity to avoid loss of the golf course, the decree protects against the forfeiture that equity abhors. (Civ. Code, § 3275 [relief from forfeiture]; *Scarbery v. Bill Patch Land & Water Co.* (1960) 184 Cal.App.2d 87, 103 [applying Civ. Code, § 3275 to avoid loss of real property].) By requiring appellants' future performance of the maintenance obligations as a condition of avoiding the loss, the decree protects the Association's right to performance as long as appellants own the golf course and preserves the remedy the Association secured by the judgment. (See Civ. Code, § 3523 [remedy exists for every wrong]; *Crain v. Electronic Memories & Magnetics Corp.* (1975)

50 Cal.App.3d 509, 524 [court has equitable power to fashion remedy as needed to avoid obvious wrong].) The future performance requirement also prevents appellants from profiting from their own wrong by paying an amount that is equivalent to only partial performance and then escaping future performance obligations. (See Civ. Code, § 3517 ["No one can take advantage of his own wrong."]; *Rains v. Arnett* (1961) 189 Cal.App.2d 337, 347 ["A person cannot take advantage of his own act or omission to escape liability."].) We thus conclude the foreclosure decree comports with "[t]he object of equity . . . to do right and justice" (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 770) and reject appellants' contention the decree must be vacated as "void."

F.     *Costs and Attorney Fees*

The Association asks us to award the attorney fees and costs incurred on appeal. Because we are modifying the judgment, we have discretion to award costs as we deem proper. (Cal. Rules of Court, rule 8.278(a)(3), (5); *Delorey v. Board of Public Works* (1931) 114 Cal.App. 20, 22.) Although appellants partially succeeded by obtaining a reduction in the value the trial court assigned the PDOT for purposes of the foreclosure sale, we have rejected most of their contentions and are affirming the foreclosure decree as modified. We thus find the Association is the prevailing party on appeal and is entitled to recover costs, including reasonable attorney fees as authorized by the PDOT. (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd. (a)(10)(A); see *Schaffter v. Creative Capital Leasing Group, LLC* (2008) 166 Cal.App.4th 745, 759 [attorney fees authorized by parties' contract are available for services at trial and on appeal].)

" '[A]n appellate court by its judgment determines the final award of costs on appeal (who shall recover the same), and the trial court determines

25

the specific judgment (what items of costs the entitled party may recover under the general award).' " (*Ramirez v. St. Paul Fire & Marine Ins. Co.* (1995) 35 Cal.App.4th 473, 478.) Upon issuance of the remittitur and timely filing of a memorandum of costs and motion for attorney fees, the trial court shall award the Association its costs and reasonable attorney fees incurred on appeal. (Cal. Rules of Court, rules 3.1700(c)(1), 8.278(c)(1).)

## III.

## DISPOSITION

The August 29, 2023 foreclosure decree, as amended nunc pro tunc on September 25, 2023, is modified by striking from the value assigned to the performance deed of trust the $244,934.37 for 36 months of management fees discounted to present value and thereby reducing the value from $2,748,434.37 to $2,503,500. As so modified, the decree is affirmed. Respondent is entitled to costs and reasonable attorney fees incurred on appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

26