Filed 1/23/25  Poolside Gardens v. Lee CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| POOLSIDE GARDENS INCORPORATED,<br><br>Plaintiff  and Respondent,<br><br>v.<br><br>LILLIAN LEE,<br><br>Defendant and Appellant. | B338390<br><br>(Los Angeles County Super. Ct. No. 23STCV30557) |

APPEAL from order of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Turner Dhillon, William M. Turner, for defendant and appellant.

No appearance for plaintiff and respondent.

_____

Plaintiff and respondent Poolside Gardens Incorporated (Poolside) remodeled a swimming pool at the home of defendant and appellant Lillian Lee (Lee). Lee tendered a claim against Poolside's contractor's bond to the issuing surety, alleging Poolside's work was defective. After learning of the bond claim, Poolside filed a civil complaint against Lee that sought, among other relief, a judicial declaration that Lee herself damaged the pool and violated applicable warranties and was not entitled to a monetary recovery. Lee filed a special motion to strike the entire complaint as a strategic lawsuit against public participation pursuant to Code of Civil Procedure, section 425.16[1] (the anti-SLAPP motion). The trial court denied her motion. We affirm.

## BACKGROUND

### A.    Poolside's Complaint

The following facts are taken from the allegations of Poolside's complaint.

In early 2022, Lee engaged Poolside to remodel her pool. Their agreement included Poolside's preparation of the pool, installation of tile, lights, and other features, and certain services, but it did not include installation of river rock or restarting the pool.

Restarting a pool following construction work is a "specialized and technical process" that includes "daily maintenance and cleaning for approximately seven to ten days to ensure that there is no damage to the pool plaster." After completing its work, Poolside recommended that Lee engage a

---

[1]    Unless otherwise specified, statutory references in this opinion are to the Code of Civil Procedure.

2

professional to restart the pool, but Lee indicated that she would restart the pool herself.

In September 2022, Lee informed Poolside of a pinhole-sized leak where a submerged light cover was located. Poolside determined that there was no risk of physical danger and that the leak was "easily fixable" by tightening the fixture or applying a small amount of sealer. Poolside notified Lee that it would fix the issue, but Lee would not allow it to do so.

About a year later, Poolside learned that Lee had tendered a claim to the surety that issued Poolside's contractor's bond, Hartford Insurance Company (Hartford). Lee asserted that the plastering work was defective, and she claimed she was entitled to the amounts she paid to Poolside, repair and replastering costs, and the expense of installing river rock.

According to Poolside, any problems with the plaster were easily correctable, and the pool was damaged by Lee when it was improperly restarted. River rock installation was excluded from the parties' contract, and future expenses associated with "non-identified and non-existent" leaks were speculative. Poolside described Lee's bond claim as "flush with false allegations, facts, and damages claims" and "insurance fraud." Poolside asserted that, "[i]f successful, [the claim] would harm [Poolside] because it could result in [its] having to erroneously 'indemnify' the bonding company . . . ."

In the first cause of action for "breach of contract warranty," Poolside alleged that Lee violated warranties provided to her "under California law." In the second cause of action for declaratory relief, Poolside alleged that a controversy had arisen that was not limited to the bond dispute but included other issues

3

relating to the pool. The particular allegations are discussed, *infra*.

## B.    Lee's Anti-SLAPP Motion

Lee filed her anti-SLAPP motion in early 2024, and in a declaration, attested to the following facts.

The parties memorialized their agreement in a one-page "Scope of Work" document that described work, materials, and a total price of $60,000. Later, the agreement was orally modified. Lee paid $62,500 to Poolside.

Lee deemed Poolside's work to be "defective and substandard" and notified Poolside of leaks and other problems. Poolside did not cure these issues and ceased communicating with Lee, requiring her to engage another contractor.

Lee filed the bond claim in August 2023. In early 2024, Hartford informed her that it was aware that Poolside was pursuing litigation. Hartford stated that, as a surety, it "is not in a position to determine which party is correct in such a dispute," and that "it is appropriate for Hartford to direct you to work with Poolside to achieve resolution of the dispute. Hartford will continue to monitor the situation until confirmation of resolution has been received."

In the anti-SLAPP motion, Lee argued that the "gist" of Poolside's complaint was that her "statutory bond claim has no merit." The complaint, she argued, "arises out of Lee's protected activity in furtherance of her statutory right to petition and free speech in connection with a public issue in that Poolside has sued Lee for making a statutory claim against Poolside's contractor's bond." Lee alleged her claim was required by law and for the benefit and protection of the public. Alternatively, she argued,

4

her bond claim "constitutes a communication with Hartford that is part of an official proceeding." Lee also argued that Poolside could not prevail on either of its two causes of action, and she asked the court to strike the entire complaint.

In its opposition, Poolside argued that its complaint did not involve a claim of wrongdoing arising from protected activity, as it did not allege Lee was liable for, or engaged in wrongdoing by, making the bond claim. Instead, Poolside argued, its causes of action seek a determination of whether Lee "breached her one year implied contractual warranty by her own conduct by improperly re-starting the resurfaced swimming pool," whether her other "'pool damage items'" have any factual or legal basis, and whether she is entitled to a refund of the amounts she paid.

After a hearing, the trial court denied the anti-SLAPP motion, finding Lee did not demonstrate that "the action here is protected by the anti-SLAPP statute." The court found that Lee failed to demonstrate that "this private dispute" implicated an "issue of public interest," as required by section 425.16, subdivision (e)(4). As for her alternative argument, the court assumed without deciding that the bond claim was an "official proceeding" (§ 425.16, subd. (e)(2)), but it found that Lee did not demonstrate the action arose from that proceeding. The court reasoned that a claim is the proper subject of an anti-SLAPP motion "'only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted,'" and the "'fact that a cause of action arguably may have been *triggered* by protected activity does not entail that it is one *arising from* such.' [Citation.]" Poolside, the court found, "does not seek to impose liability against [Lee] for her having filed a bond claim

5

with the surety.  Instead, now that [Lee] has done so, [Poolside] merely seeks to adjudicate the merits of the dispute in this forum.  In substance, this action resembles a defense to the bond claim.  In other words, liability is based not on the bond claim, but rather, the conduct that gave rise to the bond claim." (Italics omitted.)

Although the trial court found it unnecessary to rule on Poolside's probability of prevailing, it examined both causes of action.  The court found Poolside had not shown a probability of prevailing on the cause of action for breach of contract warranty because it did not demonstrate this was a recognized or viable cause of action.  However, Poolside satisfied its minimal burden on the second cause of action by establishing a proper subject for declaratory relief: a dispute over "who is to blame for the defective conditions at the property."

Lee timely appealed from the trial court's order denying her anti-SLAPP motion.

## DISCUSSION

### A.    Anti-SLAPP Statute

"A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788, citing § 425.16, subd. (b)(1).)  "[S]ection 425.16 requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted." (*City of Cotati v. Cashman*

(2002) 29 Cal.4th 69, 76 (*Cotati*).) "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Ibid*). If the defendant fails to meet his or her burden on the first step, the court should deny the motion and need not address the second step. (*Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1103–1104 (*Symmonds*).)

To satisfy the first step, a defendant must demonstrate "that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact arise from that conduct [citation]." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) Lee contends her bond claim fell within two of these categories: "any written or oral statement or writing made in connection with . . . any other official proceeding authorized by law, . . ." (§ 425.16, subd. (e)(2)) and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

We review de novo the denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State Univ.* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

**B.  Denial of the Anti-SLAPP Motion Was Proper Because Lee Failed to Demonstrate That the Entire Complaint Arises from Protected Activity**

The trial court correctly denied Lee's anti-SLAPP motion based on her failure to carry her first-step burden.  Lee argued below and argues in this appeal that her bond claim was protected activity, that the entire complaint arises from the bond claim, and therefore, the complaint should be stricken.  She did not analyze individual claims in the complaint, and she did not ask the trial court to strike particular claims or allegations.  As we will explain, the consequence of proceeding in this all-or-nothing fashion was that Lee could not satisfy her first-step burden as long as Poolside "present[ed] at least one claim that does not arise from protected activity."  (*Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1108 (*Nazari*).)  Even assuming her bond claim was protected activity, multiple claims in Poolside's complaint do not arise from the bond claim.  She could not carry her first-step burden, and her motion was properly denied.

Although the parties did not raise *Nazari* in the trial court, we are compelled to consider it because it bears directly on Lee's first-step burden.  Further, "[o]n appeal, '[w]e do not review the trial court's reasoning, but rather its ruling.'  [Citation.]  Thus, we may affirm the trial court's ruling 'on any basis presented by the record whether or not relied upon by the trial court.'  [Citation.]"  (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 802 [reviewing court could rely on statutes not raised or discussed before the trial court].)

1. *First-Step Burden When an Anti-SLAPP Motion Seeks an Order Striking Only the Entire Complaint*

In *Nazari, supra,* 93 Cal.App.5th at p. 1106, the complaint alleged multiple causes of action concerning attorney liens recorded against real property and a claim against a state cleanup fund. In their anti-SLAPP motion, the defendants argued that "'the gravamen of the suit challenges a litigation funding decision and the communications made in connection with that decision,'" and they sought an order striking the entire complaint. (*Id.* at p. 1105.) At the hearing, the defendants argued that the trial court could strike some of the plaintiffs' claims, even if it did not strike the entire complaint. The trial court rejected this argument because the narrower relief was not sought in the motion, and further, the defendants maintained throughout their papers that the entire complaint arose from protected activity. (*Ibid.*)

Our colleagues in Division Five affirmed the trial court's order denying the motion. (*Nazari, supra*, 93 Cal.App.5th at p. 1109.) "As our Supreme Court has repeatedly emphasized, the moving party bears the burden 'to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity.'" (*Ibid.*, quoting *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) "Following *Baral* [*v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*)], 'most Courts of Appeal have taken a claim-by-claim approach to the anti-SLAPP analysis, rather than attempting to evaluate a cause of action as a whole.'" (*Ibid.*, quoting *Bonni, supra,* 11 Cal.5th at p. 1010.) Our high court rejected a minority approach that allowed courts to "analyze whether the 'gravamen' of a pleaded cause of action

9

concerns protected activity." (*Ibid.*, citing *Bonni, supra,* 11 Cal.5th at p. 1011.)

"[W]hile courts may strike less than the entirety of a complaint or pleaded cause of action, the trial court is not required to take on the burden of identifying the allegations susceptible to a special motion to strike." (*Nazari, supra,* 93 Cal.App.5th at p. 1108.) "If a defendant wants the trial court to take a surgical approach, whether in the alternative or not, the defendant must propose where to make the incisions. This is done by identifying, in the initial motion, each numbered paragraph or sentence in the complaint that comprises a challenged claim and explaining 'the claim's elements, the actions alleged to establish those elements, and wh[y] those actions are protected.'" (*Ibid.*, quoting *Bonni, supra*, 11 Cal.5th at p. 1015.)

Thus, plaintiffs and courts are not required "to perform the claim-by-claim analysis prescribed in *Baral*," and a "'nonmovant should not be put to the burden of parsing the cause of action in the moving party's stead.'" (*Nazari, supra*, 93 Cal.App.5th at p. 1108; *Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 99–100 ["on appeal, the reviewing court should not be put to [the] burden" of "pars[ing] the cause of action" and "make the moving party's case for it"]; see also, *Littlefield v. Littlefield* (2024) 106 Cal.App.5th 815, 827.) "Where a defendant moves to strike the entire complaint and fails to identify, with reasoned argument, specific claims for relief that are asserted to arise from protected activity, the defendant does not carry his or her first-step burden so long as the complaint presents at least one claim that does not arise from protected activity." (*Nazari, supra,* 93 Cal.App.5th at p. 1108.)

10

The *Nazari* defendants "not only failed to identify specific claims for relief arising from protected activity, they expressly asked the court to perform the type of gravamen analysis disapproved in *Bonni*." (*Nazari, supra,* 93 Cal.App.5th at p. 1108.) They did not identify the activity on which each challenged claim rested and did not demonstrate that the activity was protected by the anti-SLAPP statute. (*Ibid*.) Moreover, "there are obviously claims in the complaint that do not arise from anti-SLAPP protected activity," such as a claim that the defendants were interfering with the plaintiffs' ability to obtain funding from a public cleanup fund. (*Ibid*.) Thus, the defendants "did not carry their first-step anti-SLAPP burden." (*Ibid*.)

In this case, Lee gave notice that her anti-SLAPP motion sought to "strike Plaintiff Poolside Gardens Incorporated's Complaint." Her notice of motion did not request that specific claims or allegations be stricken, and none were identified by paragraph number or sentence.

The request to strike the entire complaint is echoed in the memorandum of points and authorities. Lee did not separately analyze each claim in the complaint. Instead, she urged the trial court to apply the kind of "gravamen" analysis our high court rejected in *Bonni*, arguing that the "gist of Poolside's Complaint is that Lee's statutory bond claim has no merit." She asserted that, in its entirety, "the Complaint clearly arises out of Lee's protected activity." In these critical respects, Lee's anti-SLAPP motion was like the motion in *Nazari*, and therefore, she bears the first-step burden of establishing that the entire complaint arises exclusively from protected activity. (*Nazari, supra*, 93 Cal.App.5th at p. 1108.)

2.    *Multiple Claims in Poolside's Complaint Do Not Arise from the Bond Claim*

As we undertake our review of the complaint, we bear in mind that the bond claim was the only activity that Lee contended was protected under the anti-SLAPP statute.  For purposes of our analysis, we will assume, without deciding, that Lee's bond claim was protected activity.  (§ 425.16, subd. (e).)  Thus, if we determine that a claim in the complaint does not arise *from the bond claim*, it also does not arise *from protected conduct.*

In deciding whether the complaint presents a claim that arises from the bond claim, we are guided by *Park, supra,* 2 Cal.5th 1057, where our high court discussed the requisite nexus between the claims an anti-SLAPP motion challenges and protected activity.  (*Id.* at p. 1062.)  "A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Ibid.*)  "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted."  (*Id.* at p. 1060.)  "[C]ourts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability."  (*Id.* at p. 1063.)  "That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such."  (*Cotati, supra*, 29 Cal.4th at p. 78.)

Lee did not conduct a first-step analysis regarding the first cause of action, either in her anti-SLAPP motion or her brief on appeal, and therefore, has forfeited any argument that the first cause of action arises from the bond claim or protected activity.

(*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226 [failure to raise argument in the trial court forfeits the argument on appeal]; *Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 260 [appellant's failure to raise an argument in its opening brief waives the issue on appeal].)

Lee cannot establish the first cause of action arises from the bond claim in any event. Poolside alleged that warranties given to Lee were violated when she incorrectly restarted the pool, failed to notify Poolside and its subcontractor of problems with the plaster, and failed to notify Poolside before installing river rock. These violations "proximately caused any and all of the damages alleged in [her] bond complaint." The "wrong[s] complained of" (*Park, supra*, 2 Cal.5th at p. 1060) were Lee's acts and omissions in violation of warranties. The bond claim is mentioned only as a document in which she described the damages she believes she is owed, and as such, was merely evidence related to liability. (*Ibid.*) Accordingly, we conclude the first cause of action does not arise from the bond claim, and hence, does not arise from protected activity.

Under *Nazari*, we need not proceed further because the presence of even a single claim based on unprotected activity precludes Lee from carrying her first-step burden. We observe, however, that the second cause of action for declaratory relief reveals additional claims that do not arise from the bond claim. To state a claim for declaratory relief, "there must be an 'actual controversy' relating to the legal rights and duties of the parties." (*Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, 1118, citing Code Civ. Proc., § 1060.)

Lee argues that Poolside simply "seeks a declaratory relief in the form of a judgment finding that Lee's bond claim has no merit and is fraudulent . . . ," and in support of this argument, cites generally to all 10 pages of the complaint. Poolside's actual allegations, however, undermine this argument.

Poolside alleged that the controversy underlying the declaratory relief cause of action is "not necessarily limited to" Lee's bond claim. It alleged, "[t]here are many main and sub-issues that are in controversy." The main issues concern whether Poolside "was lawfully excused from having to complete the Pool following Lee's failure to perform . . . ." The controversy, Poolside alleged, includes whether Lee herself caused the damage to the pool, whether the damage was caused during Lee's restart of the pool, and whether she notified Poolside of the condition of plaster after restarting the pool and prevented Poolside and its contractor from investigating and servicing problems. The controversy is also alleged to include whether Poolside caused any damage other than the "tiny" water leak in the area of the submerged light.

If we were to excise all mention of the bond claim from the declaratory relief cause of action, the remaining allegations still would describe disputes over the quality of Poolside's work, the cause and extent of damage to the pool, and the amounts, if any, that Lee is entitled to recover. (See *Park, supra,* 2 Cal.5th at p. 1068 [elements of discrimination claim did not depend on protected statements and communications during an official tenure process; plaintiff "'could have omitted allegations regarding communicative acts or filing a grievance and still state the same claims'"].) These disputes ripened before Lee filed her

14

bond claim, were proper subjects for declaratory relief, and were not protected activity.

In sum, we conclude the complaint includes claims that do not arise from the bond claim—the only conduct Lee contends was protected under the anti-SLAPP statute. The presence of these claims precludes a finding that the entire complaint arises from protected conduct, and consequently, Lee failed to carry her first-step burden. The trial court properly denied the motion. (*Nazari, supra*, 93 Cal.App.5th at p. 1108.)

Because we have concluded that Lee failed to meet her burden on the first step of the anti-SLAPP analysis, we need not address the second step. (*Symmonds, supra,* 31 Cal.App.5th at pp. 1103–1104.) We take no position on the merits of Lee's causes of action.

## DISPOSITION

The order denying Lee's anti-SLAPP motion is affirmed.

MORI, J.

We concur:

COLLINS, Acting P. J.

ZUKIN, J.

15